Mr. Adams? Good morning, my name is Hall Adams and I represent Joni Zaya. I'm a trial lawyer and I'm only an appellate DAB lawyer. So rather than re-read the briefs, what I'd like to do for this court is highlight what Joni Zaya hopes this court sees in this record that may not jump off the page. The first thing that Joni Zaya hopes this court sees is Dr. Busse's utter exasperation when he says, as he did in his written notes and in his that he has no idea why Dr. Sood didn't send Zaya back to see him for the three week x-ray recheck like Dr. Busse had ordered. That is Dr. Busse completely at wit's end to understand such a departure from accepted medical care. Joni Zaya hopes that this court gets some sense for just how uncomfortable the defense expert Dr. Kolb was when he had to concede in his deposition that Joni Zaya's wrist should have been re-x-rayed at the three week mark. Joni Zaya hopes that... Did Dr. Kolb elaborate on that at all? Why the three week mark? He did and Dr. Busse did both. The importance of that is that that is the point at which the healing bone begins to solidify. To that point the healing bone is much more malleable and a malunion can be detected and treated much less traumatically and sometimes non-invasively if it's spotted then. So it's the idea that at the three week mark you can kind of see the direction that it's going in and take corrective action more easily than say six weeks or two months. Yes and in fact when Dr. Busse, after Dr. Busse sends Zaya back with the referral form that Dr. Sood countersigned, a few days later Dr. Busse sent his typewritten note of the first visit that Dr. Sood then read and countersigned and in that typewritten note Dr. Busse explains just exactly that to Dr. Sood. So if Sood wasn't aware of that beforehand as he claims not to have been a medical doctor in his deposition, he certainly knew after he got that typewritten note that he himself countersigned. So on remand we hope that we here in this court we hope that this court appreciates what it will look like on remand when Dr. Sood is cross-examined after he testifies that when he signs his name to a form that he himself has completed where he says that I, Dr. Sood, have reviewed the recommendations of Dr. Busse and approve that that means the opposite of what it says. Well he winds up saying that he just decided on his own that six weeks would do just as well, doesn't he? I mean is that an exercise of medical judgment? I mean just to change his mind about three weeks versus six or how do you deal with that aspect of the record? That is what Dr. Sood says. On this record that is not a valid exercise of medical judgment because Dr. Sood sent Johnny Zia out to the orthopedic practice in the first place because he himself lacked the expertise and skill to treat the condition. No one else in the prison had the expertise to treat the condition and when pressed at deposition what Dr. Sood finally conceded was that no one in the prison was a bone doctor and that's why he had to go out to see Busse for care of this fracture which wasn't a simple wrist fracture. And from that point after Dr. Sood hears from Busse that he needs to send Zia back at the three-week mark, he hears from his own collegial review at Wexford that he has to send Zia back for a recheck at three weeks, and he hears Zia himself complain over and over in a manner that Sood described as at times combative, that his wrist hurt. His statement after the fact in this litigation that it was just a difference of opinion. It's not a valid medically justifiable, a reasonable difference of opinion. And finally we hope this court appreciates and that on remand a jury gets to hear the significance as it relates to causation of Dr. Busse's testimony about what Dr. Sood's neglect necessitated, that is the chiseling, the refracturing of a fully healed malunion. Is there expert testimony in the record that calls into question whether Dr. Sood actually made a medical judgment about the three weeks versus six weeks? Dr. Sood himself says he made a medical judgment. Well right, is there evidence in the record to contradict that expert evidence? There is the expert testimony of plaintiff's expert, Dr. Evans, who has characterized Sood's decision not to send Johnny back to the orthopedic practice at three weeks, both as a deviation from the applicable standard of care and as conscious disregard for this known medical need. And there's a defense expert who says the opposite apparently. Correct. So it's a battle of experts. It's a question of fact, Your Honor. Who rendered testimony to the deliberate indifference standard. Correct. And that's an issue that a jury should decide and that's why we're here. Thank you. Thank you. Mr. Romage. Good morning. Good morning, Your Honors. I want to emphasize a few points that under the had to know of and disregard an excessive risk. There's no proof of that. Dr. Sood, at all relevant times, thought that he could treat this injury himself after Mr. Zia came back. I don't see that that's uncontested because of course Dr. Sood's original reason for the acknowledge in the written follow-up note that there needs to be a three-week recheck. And I'm not finding, you know, any evidence that he's actually relying on anything other than just his own mood not to do that. He calls it a difference in medical judgment, but we have a dispute about this, it seems to me. And in fact, intuitively, it makes a huge amount of sense to think that a partially healed bone can be readjusted much better than something that's really knit back together finally. So I don't see why Dr. Sood's idea that six weeks is the same as three makes even the slightest medical sense. Your Honor, it's not a battle of the experts because Mr. Zia's expert said that Dr. Sood consciously disregarded the recommendation of the specialist, not consciously disregarded his care. Right, just flat out refuses to follow the recommendation of Dr. Busse. Because in his experience in treating 500 orthopedic injuries, he thought it would heal at six weeks. And there's uncontested... It's not the question of would it heal at six weeks, the question is how is it healing? Dr. Busse is making a very different point than whether the bone is going to be knit back together again. Is it going to be knit back together straight or crooked? Yes, Your Honor, and it might well have ended up in hindsight being the wrong decision, but you have to look at it at the time, Your Honor. But why do we... We have a lot of cases where doctors refuse to follow the advice of a specialist in the area, and that is sometimes enough to show deliberate indifference, not just malpractice or negligence or stupidity or whatever else might be going on. And so that's what concerns me about this case. There's a treating physician who's a specialist in the area who says come back in three weeks, and Dr. Sood acknowledges this, and then for no reason at all decides that he's just not going to have causation. The guy has to have this incredibly invasive additional surgery. Yes, Your Honor, and you've hit on the key point, I think, in this case, and that is in all those cases where there was a failure to follow the specialist recommendation, it's where the physician strongly suspected facts to be true and didn't follow the recommendation. Here, Mr. Zia's expert admitted that 45 degrees of angulation, which is what this ended up being, went from two degrees to 45, is highly unusual, that a non-displaced fracture, meaning it wasn't offset, usually heals on its own. There was nothing in Dr. Bussey's report suggesting that he was at a high risk for an angulation, and that's what you have to look at. Why did he have to say that? He says I need to recheck. It could have been five minutes if it was the normal break. I think you're approaching this at an unusual vantage point. The point of the recheck is just to make sure it's healing properly. Most of the time it will be, but sometimes it doesn't, and then you can fix it. That's exactly what Dr. Bussey testifies. Yes, Your Honor. You have evidence in the record from Dr. Bussey about his reasons for wanting the three-week recheck. Your Honor, but this gets to the point. Dr. Bussey testified that he implements the three-week recommendation because he's a cautious doctor. He himself, a board-certified orthopedic surgeon, used to wait six weeks, and he testified in his deposition that he recommends three weeks because he's cautious. He didn't come close. Doesn't that tell you that this should be the expert's call? Would you want a gynecologist doing this kind of thing? Probably not. They don't work with this at the same level. If the orthopedic branch of the medical profession decides that three weeks is the right time, what's an internist or whatever Dr. Soot is to say, I know better? That's, Your Honor, but there's no evidence in the record that that is the standard, that Dr. Bussey, that that is the undisputed standard of care. Excuse me? What is the specialty of the doctor who ignored the advice? He's a general practitioner. He deals with things like this on a regular basis? Yes. So what you're saying, I think, is that he didn't think it was necessary, in his opinion, which was different from that of a specialist. Do you enunciate a reason for not following it? Because in his experience in dealing with 500 injuries... So there's a disagreement between two members of the medical profession. That's our position. One happens to be a specialist, the other one doesn't, but the other one has vast experience in the same area. Correct. Well, there you go. And that's how we're approaching it. And, you know, it might not have been the perfect result. Admittedly, I mean, it was a poor result for Mr. Uzziah, but the fact of the matter is... Thanks to Dr. Soot's decision to override the expert and treating physicians' preferences on a recheck. Well, Your Honor, but... Judge Bauer is suggesting that was fine, maybe not, but he overrode the treating and expert physicians' course of treatment. Yes, Your Honor, he did. He exercised his judgment. We can just leave that as a fact. What's the content of Dr. Evans' opinion for the plaintiff, as the plaintiff's expert in this case? Your Honor, Dr. Evans, he only opines... And I realize that the district court said that there was no opinion from Dr. Evans in the record as to deliberate indifference. And I know this court has said, you can't really say that because that's a legal conclusion. But all he says is that he deviated from the standard of care. Well, right, but you'd expect to see some sort of an opinion about whether the defendant doctor's course of treatment fell substantially outside the range of appropriate treatment, which is the, you know, the factual test, apart from the legal conclusion. But that's the factual test. And that's what we need some evidence about, about whether this is either in or outside. Exactly. And substantial, whether if it's outside, whether it's substantially outside the range so that an inference of deliberate indifference could be drawn. You don't see that from a plaintiff's expert, and you don't see that from Dr. Bussey, the consulting orthopedist, either. So what is he saying? That it was just a mistake? It was unethical? He's saying that he should have followed a reasonable doctor. What he says, I'm paraphrasing, a reasonable doctor would have followed the recommendation of the specialists. And of course, our position is that's not the standard what a reasonable doctor would have done. So, yeah, I mean, in plaintiff's brief, it says, Dr. Evans criticized Dr. Sood for having consciously disregarded Dr. Bussey's direction. And he does use the word at some point that it was unreasonable treatment, which might not be a punchy enough word, or maybe it's just some evidence that it was outside the realm of accepted standards. Probably not enough by itself. Yes. And, Your Honor, I think that that's a play on words, maybe not intentionally by the plaintiff. He consciously disregarded the recommendation. He didn't consciously disregard his medical condition because he exercised his own professional judgment as to what he thought was appropriate. And there's a difference. I don't have anything further. The court has any questions? Apparently not. Thank you. Anything further, Mr. Adams? Just these few things. First of all, in response to your question, Dr. Evans is emphatic and he's a little repetitious about it in his deposition in his report. Which is part of his deposition that Dr. Sood's neglect was beyond mere negligence. In the deposition, he used the word, Evans said he used the word recklessness and used the phrase conscious disregard. I'd also point out that Dr. Busse and Dr. Evans weren't the only ones critical of Dr. Sood's decision. We're not talking about critical. I asked the question, when there's a difference of opinion between a general practitioner and a specialist, is it under your rule necessary the general practitioner yield no matter what he thinks about it? No, that's capable of a yes or no answer. It's a question of fact for a jury to decide. Well, no, I asked whether as we were asking for rules saying that when a general practitioner refers a patient to a specialist and a specialist recommends something that the practitioner is always wrong legally? If that isn't the rule, it should be. Well, you answered my question, yes. Under your rule, that's what's happening. And in this case, Dr. Sood referred to the expert for primary care of a fracture that he himself... Do you know of any case that said what you just said? I'm not aware of any. Neither am I. I will say this, that this court's decision from August of this year that followed the briefing in this case in Connolly against Birch is as close to directly on point with the facts of this case. And there, the court held that it was... The question of fact existed as to whether a prison physician was deliberately indifferent for failing to order an X-ray timely where the consequences were that the fracture became a more complicated fracture to treat. Was the doctor that they held liable overruling the decision of a specialist? In that case? In your case, the one you just described. No, no. Thank you. Which I would suggest makes the facts in our case stronger. Thanks very much. All right, thank you. Thank you to both counsel. I'll take the case under advisement.